In the Matter of the Application of John P. Taylor for an Order against Board of Elections of Rensselaer County.

Supreme Court, Albany Special Term, October 28, 1924.

Elections — ballots — form of ballots on voting machines — candidates nominated by both Democratic and Progressive parties — Election Law, § 249, providing that names of candidates shall appear but once upon ballots is constitutional — application to compel board of elections to correct form of ballots to be used in voting machines in general election granted.

Under section 249 of the Election Law providing that " When a person has been nominated for an office by one political party and has also been nominated for that office by one or more independent bodies, his name shall appear only in the row or column containing generally the names of candidates for other offices nominated by such party, and the name and emblem of such party and of each of such independent bodies shall appear in connection with his name," the names of candidates of the Democratic party who have also been nominated by an independent body which has adopted the name " Progressive " should appear only once upon the ballot and then in the row designated for the Democratic party with the name and emblem of that party and the name and emblem of the independent progressive body.

52

**818** MATTER OF TAYLOR *v.* BD. OF ELECTIONS OF RENSSELAER CO.

Supreme Court, October, 1924. [Vol. 123

This provision of the Election Law does not unjustly discriminate between electors in the facility afforded them for casting their votes for the candidates of their choice, and is not unconstitutional.

Accordingly, an application for an order requiring a board of elections to correct the form of the ballot for voting machines to be used at a general election, so that said ballot will conform to the provisions of section 249 of the Election Law should be granted, where it appears that it is proposed to use the names of the candidates nominated by both the Democratic and Progressive parties, both in the row of the Democratic candidates and in the row of the Progressive candidates in the column of the respective offices.

APPLICATION of John P. Taylor, as chairman of the county committee of the Republican party for the county of Rensselaer, for an order requiring the board of elections of the county of Rensselaer to correct the form of the ballot to be furnished for the voting machines to be used in the county of Rensselaer in regard to the candidates for the office of state senator, sheriff and county clerk.

*James Farrell,* for the petitioner.

*John R. Broderick,* for Ransom H. Gillett and others.

*Abbott H. Jones,* county attorney, for the board of elections.

STALEY, J. No dispute of fact is involved in this proceeding. It appears that Ransom H. Gillett is the candidate of the Democratic party for state senator for the thirty-first senatorial district; that John P. Ryan is the candidate of said party for sheriff of the county of Rensselaer, and Thomas F. Murnane is the candidate of the same party for county clerk of the county of Rensselaer, and that all these candidates have been nominated by an independent body which has adopted the name " Progressive." It further appears that voting machines are authorized for use in the city of Troy, city of Rensselaer and the village of Hoosick Falls, political subdivisions of said county

The form of ballot on voting machines is provided for by section 249 of the Election Law of 1922. This section requires that the titles of offices may be arranged horizontally, with the names of candidates for an office arranged vertically under the title of the office, or the titles of offices may be arranged vertically, with the names of the candidates for an office arranged horizontally opposite the title of the office, each office to occupy as many columns or rows on the machine as the number of candidates to be elected to that office.

The section further provides that the names of all candidates nominated by any party for an office shall always appear in the row or column containing generally the names of candidates nominated by such party for other offices.

The term " party " means any political organization which at the last preceding election for governor polled at least 15,000 votes for governor, and after January 1, 1923, any political organization which polled at the last preceding election for governor at least 25,000 votes for governor.   Election Law of 1922, § 2, subd. 5.

The scheme of the arrangement of the ballot adopted in Rensselaer county appears to be that of placing the titles of offices in a horizontal row with the names of the candidates in a vertical column with the result that all candidates of the Democratic party are in one horizontal row and all candidates of the Progressive independent body are in another horizontal row, with the candidates for each separate office in a vertical column under the title of the office which they are seeking.

The question presented for decision is whether the names of the candidates above mentioned should appear both in the row of the Democratic candidates and the row of the Progressive candidates in the column for the respective offices, or whether the names should appear only once in the column for said offices and then only in the row designated for the Democratic candidates.

The legislature in its wisdom and foresight, appreciating the possibility of such a situation confronting election boards in the discharge of their duties, has provided by section 249 of the Election Law of 1922 that: " When a person has been nominated for an office by one political party and has also been nominated for that office by one or more independent bodies, his name shall appear only in each row or column containing generally the names of candidates for other offices nominated by such party, and the name and emblem of such party and of each of such independent bodies shall appear in connection with his name."

Under this statute the names of the candidates involved in this proceeding would appear only once upon the ballot and then in the row designated for the Democratic party with the name and emblem of that party and the name and emblem of the independent progressive body.

It is urged by counsel for the candidates that this statute is unconstitutional, in that it unjustly discriminates between electors in the facility afforded them for casting their votes for the candidates of their choice, and this contention is based upon the decision in *Matter of Hopper* v. *Britt,* 203 N. Y. 144.   The facts and the statute involved in the *Hopper* case are entirely different from the facts and the statute involved in this case.   The statute there in question prescribed that the name of the candidate, no matter how many parties or independent bodies nominated him, should appear but once upon the ballot and then in the party column of the

**820** Matter of Taylor *v.* Bd. of Elections of Rensselaer Co.

Supreme Court, October, 1924. [Vol. 123

party nominating him which appeared first upon the ballot, unless the candidate should designate by a certificate that his name appear in the column of some other party or independent body which shall have nominated him, and in that event his name shall be printed only in such column so designated.

It further provided that the title of such office shall be printed in the columns where his name is not printed and underneath such title shall be printed the words " see column," the blank space to contain the name of the party column in which his name is printed. It further provided that if any independent body shall have nominated only the candidates of another party or independent body no separate column for such independent body shall be printed upon the ballot. Election Law of 1909, § 331, as amd. by Laws of 1911, chap. 649, § 12.

The same section as amended in 1911 further provided that: " The ballots shall be so printed as to give each elector a clear opportunity to designate by a cross × mark in a large blank circle three-quarters of an inch in diameter, below the device, and above the name of the party at the head of the ticket or list of candidates, his choice of a party ticket and desire to vote for each and every candidate whose name is printed thereon, and by a cross × mark in a blank inclosed space, heretofore designated as the voting space, on the left of and before the name of each candidate, his choice of particular candidates."

The form of the ballot then required by law was what was known as the Australian ballot by which a straight ticket for all the candidates of a party or independent body could be voted by a cross × mark within the circle above the party column, unless the name of the candidate of a party pursuant to the portion of the section above referred to was printed in another column, in which event an additional cross × mark was required in the voting space before his name.

The evil of the law under review in the *Hopper Case, supra,* was made so in great measure because of the form of ballot to which it was applied. It was not possible under such a form of ballot to vote a straight ticket by a single cross × mark within the circle at the head of the column if all the candidates of that party or independent body were not included within the column which would be the case if the same candidate was nominated for the same office by two parties or independent bodies. It was for that reason that it was held in the *Hopper Case, supra,* that the constitutional provisions implied that every elector shall have the right to cast his vote with equal facility to that afforded other voters, and the fundamental basis of that decision is contained in the language of Chief Judge Cullen when

he said in the opinion of the court that: " While the constitution does not guarantee that the elector shall be allowed to express his vote by a single mark, our position is that he is guaranteed the right to express his will by a single mark if other voters are given the right to express theirs by a single mark and there is no difficulty in according the right to all."

In the case of *Matter of Hopper* v. *Britt*, 204 N. Y. 525, also urged by the respondents, the decision to the effect that section 58 of the Election Law of 1909 (as added by Laws of 1911, chap. 891), which provided that " The name of a candidate shall not appear more than once on the ballot as a candidate for the same public office or party position," was an unreasonable restriction upon freedom of voting and a violation of the fundamental law, was applied to a form of ballot prescribed for primary elections which was similar to that involved in the case of *Matter of Hopper* v. *Britt*, 203 N. Y. 144.

The Election Law then provided that the party committees were authorized to designate candidates for nomination and other candidates could be designated by petition, embracing not less than five per cent of the enrolled voters of the party within the district and by not less than four per cent of the entire vote cast in the political subdivision for the party candidate for governor at the last preceding gubernatorial election. Election Law of 1909, § 46 *et seq.*, as added by Laws of 1911, chap. 891.

It was further provided that the party emblem shall constitute the committee emblem and that each set of petitioners may select its own emblem. The official primary ballots were required to conform in style of printing and arrangement to the ballot prescribed for use at the general election. The candidates designated by the party committee were arranged vertically in the column on the extreme left. Candidates designated by petition were arranged in the other columns of the ballot from left to right   Above the column of the committee candidates was the party emblem. Above the column of candidates designated by petition was the emblem of other choice. Underneath the emblem in each column was a circle and the voter was privileged to vote a straight ticket by a cross × mark within the circle above the ticket of his choice. He was also privileged to vote a split ticket by a cross × mark in the voting space before the name of each candidate for whom he voted. All candidates receiving the greatest vote received the party nomination or were elected to the party position as the case might be. Election Law of 1909, §§ 57, 58, as added by Laws of 1911, chap. 891, § 29.

The prohibition against the name of a candidate appearing more

than once on the primary ballot was held to be an unjust discrimination against candidates who might be designated by the party committee or by designating petition for the reason that the followers of the ticket of designating petitioners could not vote their ticket by a single cross X mark if any of their candidates were on the ticket of the party committee.  The same situation applied if there were more than one list of candidates designated by petition and the same candidates were upon each ticket.  The facility of voting for one group of candidates was obviously under the circumstances unequal in the facility of voting for the other group of candidates for the simple reason that the voter could cast his vote for one group by a single mark while the voters of another group could not do so.

Whether the method of conducting elections prescribed by statute unnecessarily prevents the elector from voting for the candidate of his choice depends upon the method prescribed and the effect of such method in practical application.

The present form of paper ballot or the present form of the voting machine ballot does not admit of voting a straight ticket by a single cross or by pulling down a single lever.  The names of all candidates for a single office are arranged in groups or sections on the paper ballot and in separate columns or rows on the voting machine with the names and emblems of the parties or independent bodies nominating them.

The theory of this arrangement was to destroy the method of straight party voting and compel on the part of the voter the mental operation of a definite choice of candidates for each separate office. It was enacted in that form for the purpose of securing greater discrimination and intelligence in the choice of candidates to the end that the public service might be thereby bettered and improved. All electors using a voting machine are required to pull down a lever to record their choice of candidates in each separate column for the offices here in question and there is no inequality in facilities afforded by the statute which violates the guaranty that each voter shall have equality with every other voter in expressing his will at the ballot box.

Order may, therefore, be entered directing the board of elections to arrange the ballot for the voting machines to be used in Rensselaer county in conformity with the provisions of section 249 of the Election Law of 1922 (as amd. by Laws of 1924, chap. 443).